1

2

3

4

5

6

7                  IN THE UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9    KARY JOLSON SMITH,

10              Petitioner,                    No. CIV S-00-0250 GEB JFM P

11       vs.

12   G.E. HARRIS, et al.,

13              Respondents.          FINDINGS AND RECOMMENDATIONS

14   _____/

15              Petitioner is a state prisoner proceeding through counsel with an application for a

16   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1995 conviction on

17   charges of driving under the influence (count II), driving with a blood alcohol level in excess of

18   .08 (count III), and perjury (count IV), and the sentence of thirty years to life in prison imposed

19   thereon.  Petitioner was also found to have two prior serious felony convictions, had served five

20   prior prison terms, and had two prior alcohol-related convictions.  In his petition, filed February

21   7, 2000, petitioner raises twelve claims that his prison sentence violates the Constitution.

22                                   FACTS[1]

23              The facts are uncontested – [petitioner] was found sitting behind
                the wheel of his car, passed out, at an intersection with the engine

24

25       [1]  The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Smith, No.# C022968 (June 16, 1997), a copy of which is
26   attached as Exhibit B to Respondent's Answer, filed May 1, 2002.

1  running.  His blood-alcohol level was .18 percent.  In 1991,
   [petitioner] falsified an application for an identification card from
2  the Department of Motor Vehicles.

3  (People v. Smith, slip op. at 2-3.)

4                            PROCEDURAL HISTORY

5          Petitioner timely appealed his conviction to the California Court of Appeal, Third

6  Appellate District.  On June 16, 1997, the court remanded the case to the trial court for review of

7  the sentence under People v. Superior Court (Romero), 13 Cal.4th 497 (1996).[2]  (Answer, Ex. B

8  at 3-4.)  The appellate court denied the remainder of petitioner's claims.  (Id. at 4-7.)

9          On remand, the trial court declined to exercise its discretion to strike any of

10 petitioner's prior serious or violent felonies and reinstated the original sentence.  (Answer, Ex. D

11 at 2.)  Petitioner appealed and the California Court of Appeal, Third Appellate District, found no

12 error in the trial court's refusal to strike petitioner's priors and stated "no abuse of discretion

13 argument would be availing."  (Answer, Ex. D, at 3-4.)

14         Petitioner filed a petition for review in the California Supreme Court which was

15 denied on September 16, 1998.  (Answer, Ex. E.)

16         Petitioner filed a petition for writ of habeas corpus in the California Supreme

17 Court on October 28, 1999.  (Answer, Ex. J.)  The California Supreme Court, sitting en banc,

18 denied the petition on January 25, 2000.  (Answer. Ex. K.)

19                                  ANALYSIS

20 I.  Standards for a Writ of Habeas Corpus

21         Federal habeas corpus relief is not available for any claim decided on the merits in

22 state court proceedings unless the state court's adjudication of the claim:

23 /////

24

25         [2]  In Romero, the California Supreme Court held that in cases charged under the Three
   Strikes Law, a court could exercise the power to dismiss prior convictions at sentencing in the
26 furtherance of justice.  Id., 13 Cal. 4th at 529-30.

                                        2

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")  The court looks to the last reasoned state court decision as the basis for the state court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II.  Petitioner's Claims

a.  Prior Convictions Not Serious or Violent

Petitioner contends that it was error for the trial court to find that his 1972 and 1975 priors were serious or violent, for purposes of imposing California's Three Strikes Law, because the convictions were sustained prior to the adoption of the Three Strikes Law.

3

1   Respondent contends this claim fails to present a federal question because it rests entirely on

2   state law.

3            The record reflects that petitioner admitted priors II, III and V after the

4   prosecution dismissed counts I and V and prior 1.  (Clerk's Transcript ("CT") at 209-10.)

5   Petitioner waived jury trial as to priors IV and VI, and priors VII and VIII were to be submitted to

6   the jury.  (CT 210.)  On August 30, 1995, the jury found true the two prior serious felony

7   allegations.  (CT 213; RT 294.)  On January 18, 1996, the court found priors IV and VI to be

8   true.  (RT 312-13; 336-37.)

9            This claim involves essentially an interpretation of state sentencing law.  "[I]t is

10  not the province of a federal habeas court to reexamine state court determinations on state law

11  questions."  Estelle v. McGuire, 502 U.S. at 67.  Habeas corpus relief is unavailable for alleged

12  errors in the interpretation or application of state sentencing laws by either a state trial or

13  appellate court, unless the error resulted in a complete miscarriage of justice.  Hill v. United

14  States, 368 U.S. at 428; Hendricks v. Zenon, 993 F.2d 664, 674-75 (9th Cir. 1993).  So long as a

15  state sentence "is not based on any proscribed federal grounds such as being cruel and unusual,

16  racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state

17  statutes are matters of state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir.

18  1976).  Thus, "[a]bsent a showing of fundamental unfairness, a state court's misapplication of its

19  own sentencing laws does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461,

20  469 (9th Cir. 1994).

21           Applying these principles in federal habeas proceedings, the Ninth Circuit has

22  specifically refused to consider alleged errors in the application of state sentencing law.  See,

23  e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989).  Thus, in Miller, the court refused to

24  examine the state court's determination that a defendant's prior conviction was for a "serious

25  felony" within the meaning of the state statutes governing sentence enhancements.  Id. at 1118-

26  19.  The court did not reach the merits of Miller's claim, stating that federal habeas relief is not

4

1   available for alleged errors in interpreting and applying state law.  Id.  (quoting Middleton v.

2   Cupp, 768 F.2d at 1085).

3            In denying relief on this claim, the California Court of Appeal rejected petitioner's

4   argument based on the reasoning in Gonzales v. Superior Court, 37 Cal.App.4th 1302, 1310-11.

5   (Opinion at 4.)  Numerous courts in the state of California have determined that prior felony

6   convictions which predate the effective date of the Three Strikes Law are "strikes" within the

7   meaning of that law.  See e.g., People v. Sipe, (1995) 36 Cal. App. 4th 468, 477-479; People v.

8   Moenius, 60 Cal. App. 4th 820, 827 (1998); People v. Diaz, 41 Cal. App. 4th 1424, 1428-29

9   (1996);  People v. Green (1995) 36 Cal. App. 4th 280, 283 (1995).  Federal courts are "bound by

10  a state court's construction of its own penal statutes."  Aponte v. Gomez, 993 F.2d 705, 707 (9th

11  Cir. 1993).  This court must defer to California's interpretation of the Three Strikes law unless its

12  interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional

13  violation."  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989.)  There is no evidence

14  of that here.

15           Moreover, to the extent that petitioner has stated a federal constitutional claim, he

16  is not entitled to relief.  The application of a sentencing enhancement based upon a prior

17  conviction does not violate the Ex Post Facto Clause as long as the statute was in effect before

18  the triggering offense was committed.  See Brown v. Mayle, 66 Fed. Appx. 136 (9th Cir. 2003);

19  United States v. Sorenson, 914 F.2d 173, 174 (9th Cir.1990); United States v. Ahumada-Avalos,

20  875 F.2d 681, 683-84 (9th Cir.1989).  California's Three Strikes law took effect on March 7,

21  1994, before petitioner committed the principal offense on March 24, 1994.  Further, petitioner

22  has failed to show that the state courts committed an error resulting in a complete miscarriage of

23  justice.  See Parke v. Raley, 506 U.S. 20, 27 (1992) ("we have repeatedly upheld recidivism

24  statutes 'against contentions that they violate constitutional strictures dealing with double

25  jeopardy, ex post facto laws, cruel and unusual punishment, due process, equal protection, and

26  privileges and immunities'") (quoting Spencer v. Texas, 385 U.S. 554, 560 (1967); United States

1   v. Kaluna, 192 F.3d 1188, 1199 (9th Cir. 1999) ("The Supreme Court and this court uniformly

2   have held that recidivist statutes do not violate the Ex Post Facto Clause if they are "on the books

3   at the time the [present] offense was committed.") (quoting Ahumada-Avalos, 875 F.2d at

4   683-84 (9th Cir. 1989) (per curiam); Witte v. United States, 515 U.S. 389, 399 (1995) (recidivist

5   statutes do not violate double jeopardy because the enhanced punishment imposed for the later

6   offense is not viewed as either a new jeopardy or an additional penalty for the earlier crimes, but

7   is instead a stiffened penalty for the latest crime, which is considered to be an aggravated offense

8   because it is a repeat offense).  Accordingly, for all of these reasons, this claim should be denied.

9               b.  Failure to Reduce Counts II and III to Misdemeanors

10              In his second claim, petitioner argues the trial court abused its discretion in not

11  reducing counts II and III to misdemeanors pursuant to Cal. Penal Code § 17(b).  Petitioner

12  contends the underlying offense was minor and did not merit a life sentence.  (Pet. at 6.)

13  The Supreme Court has examined offenses commonly referred to as "wobblers":[3]

14

15          Under California law, certain offenses may be classified as either
            felonies or misdemeanors. These crimes are known as 'wobblers.'
            Some crimes that would otherwise be misdemeanors become

16          'wobblers' because of the defendant's prior record. . . .  Under
            California law, a 'wobbler' is presumptively a felony and remains a

17          felony except when the discretion is actually exercised to make the
            crime a misdemeanor.

18

19  Ewing v. California, 538 U.S. 11, 16-17 (2003)(citations and quotations omitted).  The Supreme

20  Court further described that "California trial courts have discretion to reduce a 'wobbler' charged

21  as a felony to a misdemeanor either before preliminary examination or at sentencing to avoid

22  imposing a three strikes sentence."  Id. at 17.  "Though California courts have discretion to

23  reduce a [felony] charge to a misdemeanor, it remains a felony for all purposes unless and until

24  the trial court imposes a misdemeanor sentence."  Id. at 28-29 (quotation and citation omitted).

25

26          [3]  A "wobbler" is an offense that can be punished as either a misdemeanor or a felony.
    See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

Here, on direct appeal, the California Court of Appeal reviewed the trial court's exercise of discretion whether to classify Petitioner's offense as a felony or misdemeanor under California Penal Code § 17(b).  (Answer, Ex. B, at 5.)  The state court rejected petitioner's claim based on petitioner's "lengthy record coupled with his continued insistence upon driving under the influence."  (Answer, Ex. B, at 5.)

This judgment of the California Court of Appeal is not reviewable by federal habeas petition.  Federal habeas relief is available "only on the ground that [one] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991). Petitioner cannot be granted federal habeas relief based on his contention that his sentence violates the Eighth Amendment because the trial court refused to reduce his conviction offense to a misdemeanor.[4]

c. Sentence Violates Eighth Amendment and California Constitution

In claims three and four, petitioner argues that his sentence is cruel and unusual punishment and grossly disproportionate under both the United States and California Constitutions.

The last reasoned opinion addressing these claims was issued by the California Third District Court of Appeal on petitioner's direct appeal.  (Answer, Ex. B, at 5-6.)

> [Petitioner] contends that imposition of a term of 25 years constitutes cruel and/or unusual punishment under the state and federal Constitutions because in this case "no one was harmed, no property was damaged, and the [petitioner] poses no threat to society."  [Petitioner] is wrong.

/////

---

[4]  Petitioner did not include a specific challenge to the state court's refusal to strike any of his prior convictions, although he discusses the trial court's statements about same in the supporting facts section of his second claim.  See also Reporters' Transcript on Appeal, at 8-14, filed April 15, 2008.  However, even if petitioner had raised such a challenge, it would fail for the same reasons set forth here.

> A punishment may violate the proscription against cruel or unusual punishment contained in the California Constitution (Cal. Const., art. I, § 17) if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (In re Lynch (1972) 8 Cal.3d 410, 424.) In determining proportionality, the court looks at the nature of the offense and of the offender, which includes his age and prior criminality. (People v. Dillon (1983) 34 Cal.3d 441, 479.)
>
> In support of his contention, [petitioner] focuses on the lack of harm done coupled with the preposterous claim that he does not represent a  threat to society. The argument is specious.
>
> That drunk drivers kill and maim at an intolerable rate requires no citation to authority. Not only is [petitioner] a recidivist drunken driver, thereby demonstrating a clear threat to society, but he has not been deterred from his criminality by the service of five prior prison terms. That no harm was done on this occasion is no thanks to [petitioner] – he was passed out at an intersection behind the wheel with the engine running. Under such circumstances, his punishment is not cruel or unusual under the California Constitution.
>
> With respect to the federal Constitution, we simply note if imposition of a sentence of life without possibility of parole for a single offense of possessing more than 650 grams of cocaine upon a defendant with no prior record is not disproportional under the United States Constitution, which was the case in Harmelin v. Michigan (1991) 501 U.S. 957 [115 L.Ed.2d 836], a fortiori a term of 25 years to life for a person in [petitioner's] position cannot be considered disproportional.

(Opinion, at 5-6.)

In Lockyer v. Andrade, 538 U.S. 63 (2003) and Ewing v. California, 538 U.S. 11 (2003), the Supreme Court considered California's Three Strikes law. In Ewing, a direct appeal from a judgment of conviction, the Supreme Court recognized the longstanding "tradition of deferring to state legislatures in making and implementing" policy decisions about sentencing laws. Id., 538 U.S. at 24. While the Court also recognized a "narrow proportionality principle," it held the Eighth Amendment "does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are grossly disproportionate to the crime." Id. at 23 (internal quotations omitted).

/////

8

1          The Court did not find Ewing's sentence of twenty-five-years-to-life to meet the

2    standard of gross disproportionality.   His commitment offense—grand theft—was based on his

3    appropriation of $1200.00 worth of merchandise from a golf pro shop.  It was committed while

4    he was on parole from a sentence for burglary and robbery.  Id. at 20, 28.  His record included

5    "numerous misdemeanor and felony offenses," most of them committed while on probation or

6    parole, and nine prison terms.  Id. at 30.  The Court concluded: "To be sure, Ewing's sentence is

7    a long one.  But it reflects a rational legislative judgment, entitled to deference, that offenders

8    who have committed serious or violent felonies and who continue to commit felonies must be

9    incapacitated."  Id.

10          Lockyer addressed the interaction of the AEDPA and the Court's Eighth

11    Amendment jurisprudence.  As in Ewing, the Court recognized the lack of clarity in its earlier

12    Eighth Amendment cases but described the "governing legal principle" in Eighth Amendment

13    cases to be "gross disproportionality."  Lockyer, 538 U.S. at 72.  The Court ultimately found the

14    California Court of Appeal had not applied federal law in an unreasonable fashion or reached a

15    result contrary to federal precedent on indistinguishable facts.  Id. at 74.  As a result, it upheld

16    Andrade's sentence of fifty-years-to-life following his convictions for two counts of grand theft

17    stemming from two incidents of shoplifting and the findings he had suffered three prior

18    convictions for residential burglary.  Id. at 65.  His record also included two federal drug

19    convictions, a federal escape charge,  and some misdemeanor thefts.  Id. at 66-67.

20          In light of Lockyer and Ewing, whether the state Court of Appeal's determination

21    was an unreasonable application of clearly established federal law depends on the severity of the

22    offense, the availability of parole and length of sentence, and the impact of recidivism.  Id. at 72.

23          Petitioner was convicted of driving under the influence and driving with a blood

24    alcohol level in excess of .08, a "wobbler" offense under California law, which may be punished

25    as a misdemeanor or a felony.  See Cal. Penal Code § 496(a).  This crime has been punished with

26    /////

an indeterminate sentence of life, with petitioner not eligible for parole for twenty-five years.[5]
Contra Rummel v. Estelle, 445 U.S. 263, 280 (1980) (life sentence for small theft ameliorated
by Texas policy of liberal grant of good time that might make person eligible for parole in twelve
years). Nevertheless, the severity of the sentence alone will not make it grossly disproportionate.
Harmelin v. Michigan, 501 U.S. 957 (1991) (sentence of life without the possibility of parole for
possession of large amount of drugs did not violate Eighth Amendment).

The final consideration is the impact of petitioner's recidivism. The probation
report prepared after the conviction for the instant offense shows that petitioner's first contact
with the law was as a juvenile, when he became a ward of the juvenile court in 1963, at age 10,
after a petition alleging burglary was sustained. (CT at 343.) He was committed to the
California Youth Authority ("CYA") in 1966 for burglary and paroled in April of 1966. (Id.) In
February of 1967, he was returned to CYA on a parole violation until he paroled again in May of
1968. (Id.) On January 8, 1971, petitioner was taken into custody for battery after he struck
another student at a local high school knocking that student unconscious. (Id.) The victim
sustained severe facial lacerations that required plastic surgery. (Id. at 343-44.) Petitioner was
committed to the CYA on February 19, 1971, and paroled on March 4, 1972. He was discharged
from CYA parole on July 12, 1974. (Id. at 344.)

As an adult, petitioner sustained the following convictions. On April 28, 1972,
petitioner was convicted of second degree robbery. (CT 344.) Petitioner was sentenced to eight
months in County Jail and four years probation. In March of 1974, following a probation
violation, petitioner was committed to state prison in Vacaville. (Id.) On June 17, 1974,
petitioner was reinstated to probation. (Id.) On August 1, 1975, petitioner was committed to
state prison for six months to life following a second probation violation. (Id.)

/////

---

[5] A third striker is not permitted to earn custody credits against his minimum sentence.
In re Cervera, 24 Cal.4th 1073 (2001).

On March 16, 1975, petitioner was convicted of assault with a deadly weapon. (Id.) Petitioner was sentenced to four years formal probation and one year County jail. On August 1, 1975, the case was terminated pursuant to Cal. Penal Code § 1203.1 as petitioner had been committed to state prison on a previous conviction. (Id.) On November 13, 1976, petitioner was convicted of battery on a peace officer, following an auto accident where petitioner was driving under the influence of alcohol. (Id. at 345.) Petitioner was sentenced to ninety days in jail. (Id.) On February 17, 1977, officers responded to the report of a man holding a female at gunpoint near a railroad levee. (Id.) Petitioner approached the officers with his hand raised and admitted he had a pistol. (Id.) Petitioner was convicted of being a felon in possession of a firearm, denied probation and sentenced to one year in county jail.

On May 11, 1978, petitioner was convicted of assault with a deadly weapon. (Id.) Petitioner was committed to state prison for three years, with two years stayed. (Id. at 346.) On September 26, 1978, petitioner was convicted of assault with a deadly weapon and committed to state prison for five years, with one year stayed to be served consecutively to his prior conviction. (Id.)

On April 27, 1983, petitioner was convicted of driving under the influence with bodily injury and sentenced to three years state prison. (Id.) Petitioner had a blood alcohol level of .23 when he drove over the center divider and collided head on with an oncoming vehicle. Two adults and four children sustained varying degrees of injuries. (Id.) He paroled March 22, 1985. (Id.)

On April 13, 1986, petitioner was convicted of vehicle theft and sentenced to five years in state prison. (Id. at 346-47.) Petitioner was paroled on September 19, 1988, but was revoked on March 10, 1989, for a six month period. On February 28, 1989, petitioner was convicted of possession of a controlled substance, and was sentenced to four years' probation and 240 days in the county jail. (Id. at 347.) On September 2, 1991, petitioner was convicted of being a felon in possession of a firearm and sentenced to three years in state prison. (Id.)

11

1    Department of Motor Vehicles records demonstrated that petitioner had sustained

2  five prior convictions for violation of Cal. Vehicle Code § 23152(a) and (b).  (CT 347.)  On

3  January 6, 1989, petitioner was also convicted of reckless driving in violation of Cal. Vehicle

4  Code § 23103.  On April 25, 1995, petitioner was convicted of driving under the influence in

5  violation of Cal. Vehicle Code § 23152 in Contra Costa County, and sentenced to state prison for

6  two years.  (CT 347-48.)

7    Petitioner argues his sentence is disproportionate and cruel because his underlying

8  conviction was minor, with no personal injuries or property damage, and was caused by

9  petitioner's alcoholism.  Petitioner argues his prior convictions were remote in time, particularly

10  those involving violence.

11    The California Court of Appeal stressed the serious nature of petitioner's offense

12  of driving under the influence and failing to be deterred from his criminality by the service of

13  prior prison terms.  The sentencing judge also focused on petitioner's recidivism, history of

14  alcohol abuse, which included recently making alcohol in prison, and the fact that petitioner had

15  failed to take any steps to address his alcoholism, such as attend Alcoholics Anonymous.

16  (Reporters' Transcript on Appeal, at 8-14, filed April 15, 2008.)

17    On this record, the California Court of Appeal did not unreasonably apply clearly

18  established Supreme Court precedent when it determined that petitioner's sentence does not raise

19  an inference of gross disproportionality to the crime committed or constitute cruel and unusual

20  punishment in violation of the Eighth Amendment or the California Constitution.  Petitioner has

21  been in prison and given other chances for rehabilitation through the juvenile justice system, the

22  prison system and numerous grants of probation and parole.  Although petitioner is correct that

23  no one was injured in the underlying offense, in 1983 when petitioner was also driving under the

24  influence, two adults and four children were injured.  (CT 346.)  Moreover, the record

25  demonstrates that petitioner was set on driving despite his problem with alcoholism, as

26  evidenced by his presentation of a driver's license with the name "Greg Smith" at the time of his

12

1   1994 arrest and his possession of several different identification cards and licenses with the

2   Department of Motor Vehicles.  (CT 352.)  As the Supreme Court has said:

> One in [defendant's] position has been both graphically informed
> of the consequences of lawlessness and given an opportunity to
> reform, all to no avail. Article 63 [the Texas recidivist statute] thus
> is nothing more than a societal decision that when such a person
> commits yet another felony, he should be subjected to the
> admittedly serious penalty of incarceration for life, subject only to
> the State's judgment as to whether to grant him parole.

7   Rummel v. Estelle, 445 U.S. at 278.  This case does not raise a presumption of gross

8   disproportionality.  See Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004); see also Hayes v.

9   Giurbino, 2008 WL 142369 (S.D. Cal. 2008)(After conviction of driving while having a

10  measurable blood alcohol of .08 percent or more, the twenty-seven years to life sentence deemed

11  appropriate because of Hayes' serious felony prior convictions and his two separate prison

12  terms).

13          Although the sentence is admittedly harsh in light of the nature of the underlying

14  offense, this court cannot find it unconstitutionally harsh in light of the Supreme Court's rulings.

15  Sigala v. Campbell, 130 Fed.Appx. 129 (9th Cir. 2005)(nolo contendere plea to felony driving

16  under the influence; sentence of 25 years to life under California's Three Strikes law is not cruel

17  and unusual punishment).  Felony driving under the influence carries "substantial risk of injury."

18  Sigala, 130 Fed.Appx. at *1.  While the underlying offense may not have resulted in violence, the

19  potential for violence was great.  The state court's rejection of petitioner's petition was neither

20  contrary to nor an unreasonable application of Supreme Court precedent.

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

d.  Ineffective Assistance of Appellate Counsel[6]

In his fifth claim, petitioner faults appellate counsel for not raising the validity of the prior convictions on appeal.  Petitioner contends that if appellate counsel had researched the trial transcript, he would have found that the jury did not find that petitioner had used a firearm or dangerous or deadly weapon.  Petitioner contends that prior number nine was not a prior conviction for purposes of Three Strikes.  Petitioner argues this investigation would have resulted in petitioner not being sentenced to 30 years in state prison.

Even if appellate counsel had challenged one of petitioner's prior convictions for lack of proof that petitioner had used a weapon, such a challenge would have been futile.[7]  See United States v. Watts, 519 U.S. 148, 117 S.Ct. 633 (1997)(sentencing court may consider conduct of which defendant has been acquitted, so long as that conduct has been proved by a preponderance of the evidence); United States v. Hurn, 496 F.3d 784 (7th Cir. 2007), cert. denied, Hurn v. United States, ___ S.Ct. ___, 2008 WL 833293 (March 31, 2008)(sentencing increase based on acquitted conduct of possession of cocaine base with intent to distribute was warranted).  The challenge also would have been futile given the balance of petitioner's criminal history.  Counsel's failure to raise this ultimately meritless argument does not establish ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000).

/////

---

[6]  Respondents contend that petitioner's remaining claims are barred by the doctrine of procedural default.  It is evident to this court that these claims are without merit.  For that reason, the court will not reach the complex questions presented by the procedural default defense.  See Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (procedural bar issue need not be resolved first if ultimate denial of claim "is a foregone conclusion.").

[7]  Petitioner's trial counsel raised this issue.  The trial court reviewed the verdict forms and the transcript of the sentencing, and noted that while the jury hung up on the use of the firearm allegation, it was clear that the jury found petitioner guilty of the Cal. Penal Code § 245 charge, assault with a deadly weapon.  (RT at 330-31; 334; 336.)  Although petitioner did not "use" the gun in that he did not fire the weapon, petitioner used the gun by striking the victim with the gun.  (Id.)  The trial court found there was "proof beyond a reasonable doubt that this prior did, in fact, occur."  (RT 336.)

e.  Claims Six and Seven re Priors

In claims six and seven, petitioner contends his 1975 assault conviction is insufficient to support a "serious felony" conviction, and that his 1972 and 1975 prior convictions cannot be categorized as serious felonies because they were sustained prior to enactment of California's Three Strikes Law.  However, these claims are based on violations of state law and are not cognizable on federal habeas review, as noted above.  Both of these claims must fail.

f.  Denial of Various Motions Implicating Petitioner's Right to a Speedy Trial

In claim 8, petitioner contends the trial court erred by denying his motion under Cal. Penal Code § 1381.  Petitioner argues that the motion should have been granted because the court knew from the documents and records that petitioner's § 1381 hearing was held up over 90 days. (Pet. at 6.)  In claim 9, petitioner contends the trial court should have granted petitioner's motion under Cal. Penal Code § 1382.  Petitioner contends that after the preliminary hearing, the court ordered a status conference for May 3, 1995, and set a jury trial date for May 8, 1995.  (CT 135.)  However, officials failed to deliver petitioner to court on those dates because Sacramento County had allowed petitioner to be transferred to another county to start new trial proceedings, and to be sent back to prison before continuing with trial proceedings.  (Pet. at 6.)  In claim 10, petitioner contends the trial court should have granted petitioner's motion under Cal. Penal Code § 1389 (agreement on detainers).  Petitioner contends that he was picked up from state prison on a Cal. Penal Code § 1381 demand for speedy trial, but prior to trial he was returned to state prison, then returned to stand trial on the same charges.  (Pet. at 6.)

The record reflects that petitioner was arrested on March 24, 1994, and a parole hold was placed against him that same day.  On April 15, 1994, petitioner was moved from the county jail to Deuel Vocational Institute on the parole violation; petitioner was not taken before a magistrate judge for arraignment during his confinement at the county jail.  (CT 52-53.)

/////

1          Since petitioner was in the custody of the Department of Corrections, he was

2   entitled to invoke the provisions of Penal Code § 1381 to require that upon notice to the District

3   Attorney that he be brought to trial on the felony complaint within 90 days of their receiving

4   notice from the petitioner.  A parole revocation hearing took place on April 27, 1994.  (CT 53.)

5   Petitioner contends that on May 6, 1994, he obtained and signed a § 1381 request and mailed it to

6   the District Attorney.  (CT 53.)  The District Attorney denies receiving this form.  (CT 61.)

7   Petitioner signed a second § 1381 request on July 19, 1994, and Counselor J. Yates took the form

8   indicating he was returning it to legal staff for mailing.  (CT 54.)  The underlying criminal

9   complaint (information) was filed on May 20, 1994.  (CT 53.)  On September 1, 1994, prison

10  officials mailed petitioner's § 1381 form to the District Attorney, 97 days after petitioner signed

11  the form.  (CT 53-54.)  On October 3, 1994, petitioner was released from Soledad Vocational

12  Institute for transport to Sacramento County in response to the May 20, 1994 complaint.  (CT 54-

13  55.)  Petitioner was arraigned on October 5, 1994.  (CT 1.)

14         Petitioner filed a motion to dismiss the information pursuant to Penal Code

15  § 1381, which motion was denied by the trial court on January 13, 1995.  The trial court found

16  that if the initial § 1381 request had been received, it would have been untimely, as it was signed

17  even before the criminal complaint was filed.[8]  (Reporter's Transcript on Appeal, Volume One,

18  at 17.)  The trial court also found that because the 90 day statute of limitations period runs from

19  the date the District Attorney receives the § 1381 request, the motion to dismiss should be

20  denied, finding that the District Attorney could not be held accountable for delays by prison

21  officials.  (Id. at 18.)  The trial court recognized petitioner's federal and state constitutional rights

22  to a speedy trial.  (Id.)  But the trial court found that despite the delay in time, petitioner had

23  /////

24

25         [8]  Under the United States Constitution the right to a speedy trial does not attach until the
    filing of the information.  The filing of a felony complaint or issuance of an arrest warrant does
    not trigger the speedy trial provisions of the United States Constitution.  People v. Martinez, 22
26  Cal.4th 752, 94 Cal.Rptr.2d 381 (2000).

1  failed to demonstrate prejudice, i.e., that evidence had gone stale, memories had faded, or

2  witnesses were no longer available.  (Id. at 19.)

3           Preliminary hearing was held on February 2, 1995.  (CT 8.)  On April 5, 1995,

4  petitioner was transported to Contra Costa County for new proceedings in that county.  (Traverse

5  at 20.)  On April 25, 1995, petitioner was convicted in Contra Costa County of driving under the

6  influence, Cal. Vehicle Code § 23152.  (CT at 347-48.)  On May 3, 1995, May 5, 1995 and May

7  8, 1995, petitioner was not transported to Sacramento County because he was still in Contra

8  Costa County.  (CT 9-10.)  Minutes reflect that on May 15, 1995, petitioner was again not

9  transported to Sacramento County, but the minutes state "in San Quentin for FP and TD if does

10 not settle or vacated."  (CT 10.)  The trial date continued to be trailed by minute entries dated

11 May 16, 1995 and May 17, 1995.  (CT 11.)  On May 18, 1995, the matter was transferred to a

12 different department, at which time petitioner's motions to dismiss pursuant to §§ 1381 and 1382

13 were denied, and the trial date was reset for June 14, 1995.  (CT 11.)  On June 2, 1995, the trial

14 date was confirmed.  (CT 12.)  On June 12, 1995, petitioner's motion for pro per status was set

15 for hearing on June 13, 1995.  (CT 13.)  On June 23, 1995, petitioner filed a motion to dismiss

16 under § 1382.  (CT 142.)  On June 26, 1995, petitioner filed a motion to dismiss under § 1389.

17 (CT 146.)  Both motions were noticed for hearing on July 5, 1995.  (CT 142, 146.)  Attorney

18 Higgins was relieved as attorney and the trial date was continued to July 17, 1995.  (CT 13.)

19 Petitioner's §§ 1382 and 1389 motions were continued to July 6, 1995, at which time it was

20 denied.  (CT 14.)  Attorney Brophy was substituted in as counsel for petitioner on July 12, 1995.

21 (CT 15.)

22           Jury trial commenced on August 21, 1995.  (CT 202.)  Petitioner was convicted by

23 jury trial on August 30, 1995 of felony driving under the influence and perjury.

24           Petitioner did not appeal the trial court's rulings on these three motions.

25 Petitioner first presented these claims in his petition for writ of habeas corpus filed in the

26 /////

1    Sacramento County Superior Court, which found the claim was barred based on petitioner's

2    failure to timely raise the issue on appeal, citing In re Robbins, supra.  Thus, the sole issue before

3    this court is whether petitioner's federal constitutional right to a speedy trial was violated.

4            The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused

5    shall enjoy the right to a speedy and public trial . . ."  U.S. Const., Amend. VI.  However, the

6    Sixth Amendment does not proscribe all delay of the trial of a criminal defendant.  Rather, the

7    United States Supreme Court has "qualified the literal sweep of the provision by specifically

8    recognizing the relevance of four separate enquiries:  whether delay before trial was uncommonly

9    long, whether the government or the criminal defendant is more to blame for that delay, whether,

10   in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice

11   as the delay's result."  Doggett v. United States, 505 U.S. 647, 651 (1992) (citing Barker v.

12   Wingo, 407 U.S. 514, 530 (1972)); United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir.

13   1986).  No one of these four factors is either a necessary or a sufficient condition to support a

14   finding that there has been a deprivation of the constitutional right to a speedy trial.  Rather, the

15   various factors are related and must be considered together.  Barker, 407 U.S. at 533.  However,

16   the first factor, length of delay, "is to some extent a triggering mechanism.  Until there is some

17   delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors

18   that go into the balance."  Id. at 530.  Courts have generally found post-accusation delay

19   "presumptively prejudicial" when it begins to approach one year.  Doggett, 505 U.S. at 652, n.1.

20           In this regard, depending on the nature of the charges, courts have generally found

21   post-accusation delay "presumptively prejudicial" when it begins to approach one year.  Doggett,

22   505 U.S. at 652, n.1; see also McNeely, 336 F.3d at 826 (three-year delay was presumptively

23   prejudicial); United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir.2003) (22-month delay

24   between first superseding indictment and trial date was presumptively prejudicial but did not

25   weigh heavily in defendant's favor because it was not excessively long); United States v. Aguirre,

26   994 F.2d 1454, 1457 (1993) (finding that "a five year delay is long enough to trigger a further

1   look," but concluding that even the five-year delay in that case did not deprive the defendant of

2   his constitutional right to a speedy trial when all the <u>Barker v. Wingo</u> factors were balanced).

3          Here, the criminal information was filed May 20, 1994, but petitioner was not

4   brought to trial until August 21, 1995.  Because this fifteen month period exceeds the one year

5   period contemplated in <u>Barker</u>, it is sufficient to trigger the rest of the analysis under <u>Barker</u>, but

6   it does not weigh heavily towards finding that petitioner was denied a constitutional right.

7          The court must now consider whether petitioner or the prosecution is more to

8   blame for the delay.  <u>Doggett</u>, 505 U.S. at 651; Compare <u>United States v. Sandoval</u>, 990 F.2d

9   481, 485 (9th Cir.1993)(defendants' resistance to the government's efforts to secure their

10  presence in the United States for trial constituted relinquishment of the speedy trial right) and

11  <u>McNeely v Blanas</u>, 336 F.3d 822, 827 (9th Cir. 2003)(delay attributable to defendant's own acts

12  or to tactical decisions by trial counsel will not support later claim of constitutional deprivation)

13  with <u>United States v. Gregory</u>, 322 F.3d 1157, 1162 (2003)(negligence on the government's part

14  weighs in defendant's favor; intentional delay even more so).

15         The initial delay was the fault of prison officials who took 97 days to transmit

16  petitioner's request for speedy trial to the District Attorney.  However, there was no evidence in

17  the record that demonstrated the District Attorney was involved in the delay or that prison

18  officials intended to delay petitioner's trial.  The trial court stated, "I can find terrible negligence

19  in their recordkeeping, but I don't know exactly why that was why it took 97 days."  (Reporter's

20  Transcript on Appeal, Volume One, at 18.)  Thus, the initial period of delay was not attributable

21  to either petitioner or respondent.

22         At the January 13, 1995 hearing, it was noted that the delay was also caused by

23  the fact that this was a drunk driving complaint, which was often delayed.  (Reporter's

24  Transcript, Volume One, at 17.)

25         It appears the second period of delay was caused by petitioner's transport to

26  Contra Costa County for arraignment and trial on other criminal charges.  The record reflects that

1    the prosecution was aware of these charges, so the government is partially responsible for a

2    portion of that delay.  (Reporter's Transcript on Appeal, Volume I, at 170.)  Thus, this delay

3    weighs in favor of petitioner.

4              However, some of the delay that followed was caused by petitioner.  Petitioner

5    filed a motion to proceed pro se, his attorney of record filed a motion to be relieved, and later,

6    new counsel was appointed to represent petitioner.  Petitioner does not benefit from this delay.

7              As noted by the United States Supreme Court in Barker, "delay that can be

8    tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy

9    charge."  Id., 407 U.S. at 530.  The reason for the delay in this case was not for an improper

10   purpose.  See Marion, 404 U.S. at 325 (it would be improper for the prosecution to intentionally

11   delay in order "to gain some tactical advantage over [defendants] or to harass them").

12   Petitioner's parole was revoked and he was returned to state prison shortly after his arrest.  It

13   appears likely that these circumstances played more of a role in any delay than any other factor.

14   There is no evidence in the record that the prosecution intentionally delayed the underlying

15   action.

16             As to the third prong, it is undeniable petitioner asserted his right to a speedy trial

17   in the trial court.  This factor weighs heavily in petitioner's favor.

18             Finally, it is the fourth factor, prejudice to petitioner, that weighs most heavily in

19   the evaluation of this claim.  United States v. Valentine, 783 F.2d 1413, 1417 (9th Cir. 1986).

20   Three types of potential prejudice are recognized under the fourth prong of the Barker analysis:

21   (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, (3) the possibility

22   that the accused's defense will be impaired.  Gregory, 322 F.3d at 1163. The third type of

23   prejudice is the most serious.  Barker, 407 U.S. at 532.

24             Here, petitioner has failed to establish that he was prejudiced by the delay in

25   bringing this case to trial.  Id., 407 U.S. at 533.  In his traverse, petitioner failed to address

26   /////

1   prejudice under <u>Barker</u>. (Traverse at 15-32.)[9]  This case was not so complex that the length of

2   time would impact evidence or testimony.  No witnesses were lost by virtue of the delay.  Given

3   petitioner's blood alcohol level at the time of his arrest, it is unlikely that the delay hampered his

4   memory any more than the alcohol did.  In the January 13, 1995 hearing, the prosecution pointed

5   out that the only prejudice petitioner suffered was he served about seven months on a parole

6   violation for which he might not get credit.  (Reporter's Transcript, Volume One, at 16.)  The

7   prosecution then offered to give petitioner credit for that time served.  (<u>Id</u>.)

8           Balancing these four factors, this court finds that the delay did not violate

9   petitioner's constitutional right to a speedy trial.  It cannot be said that the state court's summary

10  denial of petitioner's claim amounted to an objectively unreasonable application of <u>Barker</u> and

11  <u>Doggett</u>.  <u>See</u> 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 412-13.

12          g.  Trial Court Erred in Finding Petitioner Used Weapon in Prior Conviction

13          Petitioner's eleventh claim that the trial court abused its discretion in considering

14  a charge as involving a weapon in his 1978 conviction when the jury failed to find petitioner used

15  a weapon essentially involves an interpretation of state sentencing law.  As explained above, "it

16  is not the province of a federal habeas court to reexamine state court determinations on state law

17  questions."  <u>Estelle</u>, 502 U.S. at 67.  So long as a state sentence "is not based on any proscribed

18  federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by

19  indigency, the penalties for violation of state statutes are matters of state concern."  <u>Makal v.</u>

20  <u>State of Arizona</u>, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent a showing of

21  /////

22  /////

23  /////

24  _____

25      [9]  Rather, petitioner maintains he is not required to show prejudice when his rights under
    the Speedy Trial Act have been violated.  (Traverse at 21-22.)  However, petitioner cites only
    California law for this proposition.  The only issue on habeas review is whether petitioner's
26  federal constitutional right to a speedy trial was violated.

1  fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify

2  federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).[10]

3              The trial court's reference to this conviction was not fundamentally unfair.

4  Whether or not petitioner used a weapon had little impact on the sentencing judge's decision not

5  to strike any of petitioner's prior convictions, as noted above, in light of petitioner's criminal

6  record and the documented history of alcohol abuse.[11]  Although reference to use of a weapon

7  where no such finding had been made by a jury may have been improper under state law, it did

8  not result in prejudice to this petitioner, who had a lengthy criminal history spanning twenty

9  years, as well as a serious problem with alcohol, and who continued to drive while drinking.

10  After a careful review of the sentencing proceedings, the undersigned finds no federal

11  constitutional violation in the state trial judge's exercise of his sentencing discretion.[12]

12  Accordingly, this claim should be denied.

13              For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's

14  application for a writ of habeas corpus be denied.

15              These findings and recommendations are submitted to the United States District

16  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

17

18        [10]  Under California law, a trial court's discretionary act at sentencing will not be
    disturbed unless the record suggests a "manifest miscarriage of justice."  See People v. Arviso,
19  201 Cal. App. 3d 1055, 1059 (1988).

20        [11]  Indeed, the sentencing judge noted that during his recent incarceration in state prison,
    petitioner had been written up on two separate occasions for being in possession of two gallons
21  of alcohol that petitioner was making in his bunker.  Reporter's Transcript on Appeal, at 13, filed
    April 15, 2008.  The sentencing judge found petitioner has "extreme problems with alcohol,
22  alcoholism, and that [petitioner] has no control over it.  And if [petitioner] can't control it in
    prison, [he] can't control it anywhere."  (Id.)
23

24        [12]  If petitioner's sentence had been imposed under an invalid statute and/or was in excess
    of that actually permitted under state law, a federal due process violation would be presented.
25  See Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (due process violation found where
    petitioner's sentence of life imprisonment without the possibility of parole could not be
26  constitutionally imposed under the state statute upon which his conviction was based).  However,
    petitioner has failed to make such a showing.

22

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 21, 2008.

UNITED STATES MAGISTRATE JUDGE

001; smit0250.157